DAISY ALLEN v. RICHARD M. PETERSON AND OTHERS.[1]

November 9, 1934.

No. 29,951.

W. E. Reyerson, Cobb, Hoke, Benson, Krause & Faegre, and Rex H. Kitts, for appellant.

S. A. Johnson, F. E. Latham, and C. A. Pidgeon, for respondents.

LORING, Justice.

In a replevin action by the named grantee in a deed to recover its possession, the defendants had judgment in their favor upon the findings by the court, the case having been tried without a jury. No motion for amended findings or for a new trial was made, and the case comes here upon appeal from the judgment.

Melissa Morgan, the grantor in the deed here involved, was, at the time she made this and three other deeds, a widow who had lost her only child some years before the date of the deeds. She was apparently a determined woman with strong likes and dislikes. She had conceived a hatred for her own relatives on account of injustices to which she thought they had subjected her in early life.

[1]Reported in 257 N. W. 84.

460

Her contacts with her husband's relatives were pleasant, and apparently she had a strong affection for them and had announced a determination to leave her property to the named grantees in the four deeds. February 25, 1932, she was in a hospital suffering from the effects of a severe fall. She also had an irregular heart action from which her doctors expected sudden death at any time. In that situation she sent for her banker, C. R. Peterson, who, at her request, made the four deeds before mentioned. She properly executed the deeds and handed them to Peterson, saying:

"Take those papers and keep them at the bank, and then in a few days when I get better I'll be up and get them."

The following day her condition had evidently changed for the worse because Mrs. Ditmore, an intimate friend, testified that Mrs. Morgan said that she knew she was dying and that "I have made some deeds and they are all right and I'm only sorry that I haven't time to make arrangements for my personal property." She later sent for her minister, who prayed with her, and she expired in the early morning of Saturday, February 27.

Mrs. Morgan had a strong prejudice against the disposition of property by will. She had a firm belief that wills were likely to be broken. Her mother's will had been broken, and she was determined to dispose of her property by deeds, which she evidently thought were not vulnerable to the attacks that might be made upon a will.

The trial court in its memorandum attached to its findings stated:

"There can be no doubt that at the time Melissa Morgan executed the deeds, it was her then intention that title to the property described therein should ultimately vest in the grantees named therein."

The trial court, relying upon Dickson v. Miller, 124 Minn. 346, 145 N. W. 112, and Wortz v. Wortz, 128 Minn. 251, 150 N. W. 809, found that there had been no delivery of the deeds and that Mrs. Morgan intended to and did reserve the right to recall the deeds at any time before her death. It found that the conversation above referred to between Mrs. Morgan and Mr. Peterson occurred, but

made no findings as to the conversation with Mrs. Ditmore. In the two cases relied upon by the trial court it was held that where the grantor reserved the right to recall the deeds during his lifetime the delivery was not complete and the deed not effective. In the case at bar it may be conceded that on February 25, when Mrs. Morgan turned over the deeds to Peterson, her instructions to him indicated that she expected to take charge of the deeds and deliver them herself when so minded. If the evidence had stopped there an affirmance of the trial court's views would be proper; but the conversation which took place with Mrs. Ditmore on the day before she died indicates an intention on her part that the deeds which she had executed should take effect as conveyances. She realized that she was about to die and so announced. She also announced a very firm determination that none of her property should go to the "Hayes tribe" (meaning her own relatives), saying that she would turn over in her grave if they got the property. Without a doubt, if the conversation with Mrs. Ditmore occurred, it was proof that Mrs. Morgan's intention at that time was that the deeds should be effective. Having come to a realization that she was on the eve of departure from this life, she would not have allowed the situation to stand so that her own relatives would get the property which she was determined they should not have. She was afraid to dispose of her property by will, and with that fear in mind her announcement that she had made the deeds and that they were all right can hardly be construed otherwise than as an announcement of her intention that the deeds should be presently effective. In Stevens v. Hatch, 6 Minn. 19, 25 (64), this court said:

"The main thing which the law looks at, is whether the grantor indicates his will that the instrument should pass into the possession of the grantee, and if that will is manifest, then the conveyance enures as a valid grant, although, * * * the deed never comes into the hands of the grantee."

And again in the same case the court said [6 Minn. 19, 24 (64)]:

"The doctrine seems to be settled beyond reasonable doubt, that where a party executes and acknowledges a deed, and afterwards

either by acts or words, expresses his will, that the same is for the use of the grantee, especially where the assent of the grantee appears to the transaction, it shall be sufficient to convey the estate, although the deed remains in the hands of the grantor."

This opinion cited with approval the case of Souverbye v. Arden, 1 Johns. Ch. 240, 256, where the New York court held:

"A voluntary settlement, fairly made, is always binding in equity upon the grantor, unless there be clear and decisive proof, that he never parted, nor intended to part, with the possession of the deed; and even if he retains it, the weight of authority is decidedly in favor of its validity, unless there be other circumstances, beside the mere fact of his retaining it, to show it was not intended · to be absolute."

Mr. Justice Mitchell, speaking for this court in Nazro v. Ware, 38 Minn. 443, 445, 38 N. W. 359, 360, said:

"No particular ceremony is necessary to the delivery of a deed. It may consist in an act without words, or in words without any act; and, if in words, it is immaterial whether they are spoken or written. Manual possession of a deed by the grantee is not essential. Whether there has been a delivery is rather a question of fact than of law, depending upon the intent of the grantor to vest an estate in the grantee. If a deed be so disposed of as to evince clearly the intention of the parties that it should take effect as such, it is sufficient."

See also Chastek v. Souba, 93 Minn. 418, 420, 101 N. W. 618, where this court announced its adherence to the doctrine adopted in its previous opinion that the question of delivery is one of fact rather than of law, depending largely upon the intent of the grantor to vest the estate in the grantee.

In Kessler v. Von Bank, 144 Minn. 220, 174 N. W. 839, 840, deeds were executed by a grantor who was then on his deathbed and who after their execution indicated by a gesture that they be placed in a valise and the valise returned to a closet from where it had been brought. There was no other evidence, direct or circumstantial, to

the intent of the grantor to pass title. This court said [144 Minn. 222]:

"The intention of the grantor to pass title by the execution and disposition of the deed is of controlling importance."

In Schooler v. Schooler, 258 Mo. 83, 92, 167 S. W. 444, 446, the supreme court of that state held:

"It is also the law that the presumption of the delivery of a deed, or its acceptance in case of voluntary settlement, is stronger than in a case of bargain and sale. * * * Cannon v. Cannon, 26 N. J. Eq. 316."

In Hoyt v. Northup, 256 Ill. 604, 608, 100 N. E. 164, 165, it was held:

"In the case of a voluntary conveyance the retention of the deed in possession of the grantor will not destroy its effect as a deed, unless there are other circumstances to show that it was not intended to be absolute and to operate as a present conveyance. Baker v. Hall, 214 Ill. 364, 73 N. E. 351."

We are convinced that all the circumstances shown by the record, together with the conversation with Mrs. Ditmore, compel a conclusion that on February 26, after she had become convinced that she was about to die, Mrs. Morgan entertained an intention that the deeds be presently effective. That being her intent, neither her failure to announce it to Peterson nor her retention of the documents in his hands, kept the delivery from being effective.

The trial court made no finding in regard to the conversation with Mrs. Ditmore. She was evidently a disinterested as well as an unimpeached witness, whose testimony may not be disregarded under O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430. With her testimony in the case, we must reach a conclusion contrary to that arrived at by the trial court.

The judgment is reversed with directions to amend the findings and conclusions and to enter judgment to conform to the views herein expressed.

*STONE, Justice,* took no part.